# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case Number: 4:19-CR-00068 |
| | § | Judge Mazzant |
| DAVID MCKINNEY | § | |
| | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant's Motion for a *Franks* Hearing/Suppress (Dkt. #740). The Court, having considered the motion, the response, and the applicable law, finds the motion must be **DENIED**.

## BACKGROUND

This motion concerns two search warrants for residences connected to alleged drug trafficker Defendant David McKinney ("McKinney") (Dkt. #758). On February 13, 2019, Tarrant County District Judge Mollee Westfall granted search warrants for 7201 Chambers Creek, Arlington, Texas and 3251 Matlock Road, Arlington, Texas (Dkt. #740). These warrants were based on identical warrant applications written by the Texas Department of Public Safety ("DPS") (Dkt. #740). The supporting affidavits detailed evidence collected by agents from November 1, 2016, to February 8, 2019 (Dkt. #758). Surveillance tactics used include T-III wiretaps, interviews, physical surveillance, controlled purchases, pen registers, pings, and pole cameras (Dkt. #758).

McKinney moves to suppress evidence from searches at these addresses because he alleges the supporting affidavits to the search warrants contain six demonstrably false statements:

1. On November 18, 2018, McKinney "was identified on two different occasions arriving and departing a kilogram quantity supply house located at 4903 West University, Dallas, TX."

2. On February 6, 2019, Special Agents "observed McKinney arrive and depart from a new (narcotics) stash house location on Pine Street. Agents believed McKinney to be picking up kilogram quantities of cocaine and/or delivering large amounts of US current to and from the stash house location."

3. "On 12/10/18 and 12/11/18, Special Agents again observed McKinney arrive and depart from a new (narcotics) stash house location on Blossomheath Street. Agents believed McKinney to be picking up kilogram quantities of cocaine Agents believed McKinney to be picking up kilogram quantities of cocaine."

4. "Mr. McKinney and his cell phone number were positively identified due to a traffic stop" on November 27, 2020."

5. Drug ledgers located at a stash house "confirmed that MCKINNEY picked up large amounts of cocaine from the above listed stash house locations. The drug ledgers recorded that MCKINNEY picked up cocaine in the listed amounts--11/18/18: 5 kilograms; 11/27/18: 3 kilograms of cocaine, etc…" (capitalization in original).

6. Mr. McKinney would leave each of the two suspected houses and visit the stash houses.

On March 14, 2019, a grand jury indicted McKinney on one count of conspiracy to distribute or possess with intent to distribute or dispense cocaine, in violation of 21 U.S.C. § 846 (Dkt. #87). On January 14, 2021, McKinney moved for a *Franks* hearing and to suppress evidence from the searches (Dkt. #740). On January 28, 2021, the Government responded (Dkt. #758).

## LEGAL STANDARD

A valid search warrant may be issued only upon a finding of probable cause. *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). The information necessary to show probable cause must be contained within a written affidavit given under oath. *Id.* Probable cause does not require proof beyond a reasonable doubt; a judge need only have a substantial basis for concluding a search would uncover evidence of wrongdoing. *Id.* Whether probable cause exists requires a practical, common-sense determination of whether the circumstances establish a fair probability contraband or evidence of a crime will be found in a particular place. *United States v. Steele*. 353 Fed.Appx.

908 (5th Cir. 2009).

When reviewing a motion to suppress, courts apply a two-step test. *See United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006). In the first step, courts determine whether the good-faith exception to the exclusionary rule applies. *Id.*; *see also United States v. Leon*, 468 U.S. 897, 920 (1984). Under the good faith exception, where probable cause for a search warrant is based on incorrect information, the evidence will not be excluded if "the officer's reliance upon the information's truth was objectively reasonable." *Id.* (quoting *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002)). Because a warrant is normally issued by a magistrate, issuance alone "normally suffices to establish good faith on the part of law enforcement officers." *United States v Craig*, 861 F.2d 818, 821 (5th Cir. 1988). When the good-faith exception applies, the motion to suppress may be denied without any further inquiry. *See United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999). If the good-faith exception does not apply, courts then look to whether there was a substantial basis for the magistrate's determination that probable cause existed. *Id.* at 407.

The good-faith exception does not apply if: (1) the affiant recklessly disregarded the truth or knowingly misled the issuing judge with false information; (2) the issuing judge wholly abandoned their judicial role; (3) the warrant is based on an affidavit that lacks an indicia of probable cause so as to render belief in it unreasonable; and (4) the warrant is so facially deficient in failing to particularize the place to searched or things to be seized. *United States v. Payne*, 341 F.3d 393, 399–400 (5th Cir. 2003). When challenging application of the good faith exception, the defendant carries the burden to prove by a preponderance of the evidence that it does not apply. *United States v. Rosa*, 721 Fed. App'x 403 (5th Cir. 2018).

A *Franks* hearing "is a hearing to determine whether a police officer's affidavit used to obtain a search warrant was based on false statements by the police officer." *United States v.*

3

*Richardson*, 478 F. App'x 82, 83 n.1 (5th Cir. 2012) (citation omitted). A defendant is only entitled to a *Franks* hearing if they show: (1) allegations in the supporting affidavit are false; (2) the false allegations were deliberate or were made with a reckless disregard for the truth; and (3) the allegations are so material the remainder of the affidavit is insufficient to support a finding of probable cause. *United States v. Dickey*, 102 F.3d 157, 161–62 (5th Cir. 1996) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Even if a defendant satisfies the first two prongs of the test, they are not entitled to a *Franks* hearing if, when the falsehood is set aside, "there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Dickey* 102 F.3d at 161–62; *see also United States v. Privette*, 947 F.2d 1259, 1261 (5th Cir. 1991). Only if the false statements are "necessary to the finding of probable cause," does the Fourth Amendment require a hearing. *Franks*, 438 U.S. at 156. Under *Franks*, there is a "presumption of validity with respect to the affidavit supporting the search warrant" and a defendant must make a "substantial showing" in proving the evidence should be suppressed. *Id.*

## ANALYSIS

McKinney asks the Court to: (1) hold a *Franks* hearing on the motion to suppress; and (2) suppress all evidence obtained from the search warrants because the affidavits contained six false statements (Dkt. #740). The Government disagrees, arguing a *Franks* hearing is unwarranted because the affidavits did not contain false statements and, even if they did, the agents acted in good faith.

The Court finds a *Franks* hearing should not be granted because McKinney did not carry his burden in proving the affidavits contained false statements, were made deliberately or recklessly, and were material to the finding of probable cause. The Court also finds the evidence should not be suppressed because the agents acted in good faith.

4

**I.** *Frank's* **Hearing**

To be entitled to a *Franks* hearing, McKinney must first prove: (1) the affidavits contain falsehoods; (2) the false statements were made deliberately or with reckless disregard for the truth; and (3) the warrant did not have probable cause without these false statements.

**i.** **Falsity**

Proving falsity requires more than merely providing conclusory statements, but it requires "an offer of proof." *Winfrey v. San Jacinto Cty.*, 481 F. App'x 969, 980 (5th Cir. 2012) (quoting *Franks*, 438 U.S. at 171). Alleging something is debatable is not enough to satisfy this burden. *See United States v. Symmank*, 397 F. App'x 991, 994 (5th Cir. 2010).

Here, the Court finds McKinney did not carry his burden in making a substantial showing of false or misleading statements in the affidavits. First, McKinney does not demonstrate how the identification of him driving the black SUV to the stash house on November 18, 2018 is based on false information. McKinney argues agents fabricated this identification because there is no clear video footage. But while agents may not have visual footage, this identification is not false because they used other surveillance tools to corroborate the identification. Agents tracked McKinney's cell phone location between November 15, 2018 and January 9, 2019. While tracking his cell phone on November 18, agents observed the black SUV mirror the exact path of the pings. And not only did the pinging track the black SUV to the stash house, but it showed the car stop at McKinney's residence later in the night. In the affidavit, affiants noted this reliance on multiple surveillance methods to form the basis of their identification. Contrary to McKinney's asserting, the affidavit never states it is solely based on video footage. As this evidence supports the identification, McKinney fails to prove how this allegation in the affidavit is false.

Second, McKinney does not demonstrate how the identifications of him driving the black

SUV to the stash house on December 10 and 11, 2018 are based on false information. McKinney argues agents did not identify him because there is no clear video footage. But, as before, agents used other evidence to support the identification. By December 10 and 11, 2018, agents had already observed McKinney driving an identical black SUV to the stash on several occasions. Further, on December 11, 2018, Special Agent Poling personally observed McKinney driving the black SUV when he pulled up next to him on the street. McKinney argues there are no notes supporting the identification, but Special Agent Poling memorialized the positive identification in his report. As this evidence supports the identification, McKinney fails to prove how this allegation in the affidavit is false.

     Third, McKinney does not demonstrate how the identification of him driving the black SUV to the stash house on February 6, 2019 is based on false information. McKinney argues law enforcement fabricated this identification because there is no clear video footage. But like on November 18, 2018, agents used other surveillance tools to corroborate the identification. By February 6, 2019, agents had already observed McKinney driving an identical black SUV to the stash house on several occasions. These prior identifications bolster their identification on this occasion. Further, agents were able to confirm his visit to the stash house using ledgers obtained from a subsequent search of a related drug traffic house on February 7, 2019. The ledger includes arrival and departure times for an individual using the alias "More," which correspond exactly to McKinney's location through cell phone pinging. Agents also associate the alias "More" with McKinney because "More" is short for "Moreno," a slang term used in Spanish to refer to dark skinned people, and McKinney is the only African American agents observed frequenting the stash house. As this evidence bolsters the identification, McKinney fails to prove how this allegation in the affidavit is false.

Fourth, McKinney does not demonstrate how agents falsified the connection of the tracked cell phone number to McKinney. McKinney argues agents base the connection solely on information obtained from a traffic stop of McKinney on November 27, 2018, and because the car contained two people, they are unable to confirm who owns the cell phone. But this ignores other surveillance on McKinney. Agents began surveilling McKinney on the morning of November 27, 2018. Agents observed his actions throughout the day and matched these movements to the tracked location of the cell phone. When he entered the car and began driving in the morning, the cell phone matched his movement. When he exited his car and entered his residence in the evening, the cell phone tracking matched his movement. And during each stop McKinney made throughout the day, the cell phone tracking matched his movement. McKinney suggests agents solely relied on the traffic stop to connect McKinney to the cell phone number, but agents only used the traffic stop to confirm the identity of the man they were following throughout the entire day. Agents did not search the cell phones or record the cell phone numbers of either individual during, but rather used the stop to check McKinney's license. As this evidence supports the connection of the cell phone to McKinney, McKinney fails to prove this allegation in the affidavit is false.

Fifth, McKinney does not demonstrate how agents lied about the ledger entries for "More" chronical McKinney's illegal activity. McKinney argues the drug ledgers do not list Mr. McKinney's name, picture, or anything to positively confirm him as the person who picked up the cocaine on the dates in the ledger. But the dates and times of arrival and departure under the name "More" directly correlate to the timing of cell phone location tracking on McKinney. Further, a cooperating defendant confirmed the ledgers depict cocaine transactions and positively identified McKinney as a party. McKinney is also the only African American man seen at the stash location, and "More" is short for "Moreno," a slang term used in Spanish to refer to dark skinned people.

7

As the evidence corroborates "More" being an alias of McKinney in the ledger, McKinney fails to prove this allegation in the affidavit is false.

Lastly, McKinney does not demonstrate how agents lied about observing him travel to and from the searched addresses to the stash house on February 6, 2019. McKinney argues agents lied because both warrants state he traveled to the stash house from the searched address at the same time, which is impossible. But McKinney misreads the warrants. Based on cell phone location tracking and visual confirmation, agents observed McKinney make trips back and forth between all the three locations throughout the day. While each warrant only refers to one location, this does not mean the trips occurred simultaneously. Because this evidence supports the observation, McKinney fails to prove this allegation in the affidavit is false.

As McKinney fails to prove any of the challenged statements are false, McKinney fails to carry his burden of proving falsity.

### ii. Wrongdoing

In assessing wrongdoing, courts should deny a motion for a *Franks* hearing if the affiant reasonably believed the veracity of the affidavit. *See United States v. Arispe*, 328 F. App'x 905, 907 (5th Cir. 2019).

Here, the Court finds McKinney did not make a substantial showing the affidavits were deliberately or recklessly false. The Court finds the allegations in the affidavit are not false for the reasons stated above. Even if the statements were slightly inaccurate, they are reasonable inferences made from a lengthy surveillance operation on McKinney. Further, McKinney did not make any offer of proof how the challenged statements amount to deliberate or reckless falsehoods. McKinney only argues the evidence demonstrates a "clear deliberate pattern" of gross exaggeration.

As none of the challenged statements are false, McKinney fails to carry his burden of proving wrongdoing.

### iii. Materiality

Courts should deny a motion for a *Franks* hearing if, even when any false statements are excised, the affidavit would still "give the reviewing judge probable cause for" issuing the warrant. *United States v. Signoretto*, 535 F. App'x 336, 340 (5th Cir. 2013).

Here, the Court finds McKinney did not make a substantial showing the warrants lacked probable cause without the disputed identifications. McKinney is charged with one count of conspiracy to distribute or possess with intent to distribute or dispense cocaine, in violation of 21 U.S.C. section 846 (Dkt. #87). Agents searched the two addresses under suspicion of finding money, documents, and digital devices related to the sale, purchase, and customers of cocaine trafficking. Even excising the disputed parts of the affidavit, the issuing judge still had probable cause to support the warrant. The unchallenged portions of the affidavit allege: agents intercepted cell phone conversations implicating McKinney, a cooperating defendant identified McKinney as a "runner" transporting cocaine for the drug trafficking operation, a second cooperating codefendant identified McKinney by photo as a customer of the drug trafficking operation, and agents observed McKinney driving back and forth between the search addresses and his residence on multiple occasions. McKinney argues, without the excised statements, the remainder of the affidavits are only uncorroborated allegations. But taken together, the cell phone intercepts, informants, and visual identifications support a finding of probable cause.

As there is probable cause to support the warrant even without the disputed parts of the affidavit, McKinney fails to carry his burden of proving materiality. Because McKinney did not prove falsity, wrongdoing, and materiality, his motion for a *Franks* hearing should be denied.

## II. Motion to Suppress

The Government argues the motion to suppress should be denied, regardless of the veracity of McKinney's objections, because agents acted in good faith in obtaining the warrant. McKinney does not address the good faith exception, but he does allege agents acted deliberately and grossly exaggerated the evidence to bolster a weak case for probable cause.

The Court finds agents acted in good faith in obtaining the warrant. As addressed above, none of the challenged statements in the affidavit are demonstrably false and there is no evidence agents deliberately or recklessly misled the judge. Agents based each identification on more than mere video footage, but surveillance over the course of several months. Before obtaining the warrant, officers also corroborated this surveillance with information in the ledger matching the cell phone pinging. For the good faith exception not to apply, the affidavit would have to be "so lacking in indicia of probable cause as to render officer's belief in its existence unreasonable." *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006). McKinney does not meet this standard. Because the good faith exception applies, the motion to suppress may be denied without any further inquiry into probable cause. *See Cherna*, 184 F.3d at 407.

## CONCLUSION

McKinney did not carry his burden in proving the challenged statements are false, agents acted deliberately or recklessly, the search warrant otherwise lacked a basis for probable cause, and officers acted in bad faith. It is therefore **ORDERED** that Defendant's Motion for a *Franks* Hearing/Suppression (Dkt. #740) is hereby **DENIED**.

SIGNED this 26th day of February, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE